UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY KING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:12CV01676 AGF |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Jeremy King for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted Petitioner of murder in the first degree and armed criminal action, both crimes arising out of a shooting on March 29, 2005, in which Petitioner shot into a car with two occupants and killed one, Tyrone Sills ("Sills"). Petitioner was sentenced to life imprisonment without the possibility for parole or probation on the murder count, and 30 years' imprisonment on the armed criminal action count, with the sentences to run concurrently.

In his petition for federal habeas relief, Petitioner raises two claims: (1) that he was denied his Sixth Amendment right to a speedy trial; and (2) that his trial counsel was ineffective by failing to investigate, locate, and call an individual named Darryl McNairy as an alibi witness. Respondent argues that Petitioner's first claim is procedurally defaulted, and in any event, lacks merit; and that his second claim was reasonably

adjudicated by the state courts. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Pretrial and Trial Proceedings

Petitioner was taken into custody on April 5, 2005. At the time of his arrest, he told the police that he had been at his grandfather Charles Johnson's house, about one block away from the crime scene, when Sills was shot. He did not mention anyone else who was at the house. The police interviewed Johnson that night and he told them that Petitioner was not at his house at the time of the shooting and had not been there for several months prior.

On April 6, 2005, the state Public Defender's office entered an appearance on Petitioner's behalf. On May 2, 2005, Petitioner was indicted on the two crimes of conviction. On September 13, 2005, Petitioner filed a pro se motion requesting a speedy trial. (Resp. Ex. A at 11.)[1] On April 20, 2006, Public Defender Michelle (Morgan) Buriel entered her appearance on Petitioner's behalf. The record includes a letter dated August 22, 2007, from counsel for the Clerk of the Missouri Supreme Court to the judge presiding over Petitioner's case, stating as follows: "Please find enclosed correspondence

---

[1] A copy of the motion was submitted by Respondent as part of Exhibit A (the state court's "Legal File" in Petitioner's direct appeal) to Respondent's response to this Court's Order to show cause why habeas relief should not be granted. This copy indicates that the motion was signed by Petitioner on August 8, 2005; it is file-stamped "Received" by the trial court on September 13, 2005. Neither the motion, nor any ruling on a speedy trial motion, appears on the state court docket sheet.

from [Petitioner] indicating he has been incarcerated 28 months in spite of his claim for a speedy trial." (Resp. Ex. L.)[2]

Trial commenced on November 5, 2007. At trial, Petitioner was represented by Public Defender Geralyn Ruess, who had taken over the case sometime prior to trial.

The evidence at trial showed the following. At about 1:00 a.m. on March 29, 2005, Sills was driving a car with his mother, Marilyn Sills, in the passenger seat. While they were stopped in traffic, Petitioner approached the driver's side window, said, "It's your pay day," and shot Sills. Sills fell into his mother's lap and died. When the police arrived, Marilyn Sills gave a description of the perpetrator, and later identified Petitioner from a photo array, and again at a live lineup. In court, Marilyn Sills testified that she was one hundred percent certain that Petitioner was the shooter. Petitioner pursued a defense of misidentification.

**Direct Appeal**

On direct appeal, Petitioner argued that the trial court plainly erred by (1) failing to suppress in-court and out-of-court identifications of Petitioner, which Petitioner contended were suggestive and unreliable; (2) overruling Petitioner's objection to Marilyn Sills' testimony that she was one hundred percent sure that Petitioner was the shooter; (3) admitting a photograph of Sills' body with blood on his mouth and nose; (4) denying Petitioner's motion for judgment of acquittal due to a lack of sufficient evidence

---

[2] The letter was attached as an exhibit to Petitioner's petition for state habeas relief, discussed later in this Memorandum and Order.

of cool deliberation; and (5) giving the jury a "hammer instruction" during its deliberation. The Missouri Court of Appeals rejected each of these claims.

**State Postconviction Proceedings**

In a pro se motion for state postconviction relief, filed pursuant to Missouri Supreme Court Rule 29.15, Petitioner claimed, in summary form, that the trial court denied his right to a speedy trial, and that defense counsel was ineffective in failing to call McNairy as an alibi witness. (Resp. Ex. E at 3-8.) In an amended motion prepared with the assistance of appointed counsel, Petitioner stated that his pro se motion was "amended to include" a more detailed presentation of the claim of ineffective assistance of counsel. Petitioner asserted that before trial he had asked his counsel to contact McNairy, who lived in the same boarding house with Johnson, and who would have testified that Petitioner was present with him at Johnson's house during the time that Sills was shot. *Id*. at 11-21.

At an evidentiary hearing held on July 23, 2009, Ruess testified that she took over the case from Buriel two or three months before trial. She testified that she attempted to contact McNairy as a witness, because Petitioner had told her that McNairy was with Petitioner at Johnson's house at the time of the shooting. Reuss testified that she tried to reach McNairy but the phone number she had for him had been disconnected. She was told that he was in Mississippi, and although she repeatedly asked Petitioner's mother for a current phone number, Petitioner's mother was never able to supply one. Reuss further testified that her review of the case file showed that Petitioner's prior attorneys had also tried and failed to contact McNairy. Ruess stated that an alibi defense based on

4

McNairy's purported testimony would have been problematic in light of Johnson's above-noted statement to the police, made on the night of Petitioner's arrest, that Petitioner was not at Johnson's house at the time of the shooting. Reuss also testified that she tried to contact another individual Petitioner told her was at Johnson's house on the night of the shooting, Andrea Shelton, but that she (Reuss) was unsuccessful. (Resp. Ex. I.)

Petitioner testified at the hearing that his mother knew McNairy's phone number, and that although Reuss told him she (Reuss) tried to contact his mother numerous times to get current contact information for McNairy, his mother told him that Reuss never tried to contact her. Petitioner's mother testified that McNairy (her cousin) had been in Mississippi for a year and a half and then came back to St. Louis and was in St. Louis during Petitioner's trial. She testified that she was not sure of the timeframe of when he was in Mississippi and when he returned to St. Louis, but that she gave Reuss the phone number of McNairy's mother, with whom McNairy lived in St. Louis. She testified that she was at Johnson's house between 9:00 and 10:00 p.m. on the night of the murder and that McNairy and Petitioner were there, too. *Id*.

McNairy testified by deposition dated September 15, 2009, that at about 8:45 p.m. on the night before the day of Petitioner's arrest, Petitioner came to the boarding house where McNairy and Johnson lived and asked if he could spend the night, as he often did. McNairy asked Johnson if Petitioner could sleep in Johnson's room. Johnson agreed and Petitioner went to sleep on Johnson's couch. Petitioner's mother came to McNairy's room at about 10:00 p.m. and asked if Petitioner was there. McNairy told her that

5

Petitioner was asleep on Johnson's couch. When she left about 20 minutes later, McNairy went to sleep. McNairy awoke at 4:30 a.m. and saw Petitioner asleep on Johnson's couch. The front door to the house had a padlock and a key was needed to get out. Besides McNairy and Johnson, the two other tenants in the building also had a key. At about 10:00 a.m. that morning, McNairy heard that Petitioner had been arrested. McNairy testified that after these events, he relocated to Mississippi, where he lived in a house without a phone, until he returned to St. Louis in December 2011. He testified that he was willing and able to testify at Petitioner's trial but was never contacted by Petitioner's counsel. (Resp. Ex. E at 29-30.)

The only claim addressed by the motion court in denying Petitioner's motion for postconviction relief was the ineffective assistance of counsel claim. The court found that Ruess had attempted to locate McNairy in Mississippi, but there was no phone at which he could be reached, and further that McNairy's testimony would not have provided an alibi for Petitioner because McNairy testified that he (McNairy) was asleep at the time of the murder. The court also noted that the record showed that Petitioner was arrested six days after the murder. *Id*. at 60-64. This was the only claim raised in Petitioner's appeal from the denial of his postconviction motion. (Resp. Ex. F.) On May 17, 2001, the Missouri Court of Appeals found that the motion court did not err, as Petitioner "did not show that counsel failed to sufficiently attempt to locate McNairy and because McNairy's testimony would not have provided [Petitioner] with an alibi." (Resp. Ex. H.)

6

**State Habeas Petitions**

On July 29, 2011, Petitioner filed a pro se petition for a writ of habeas corpus in Missouri circuit court pursuant to Missouri Supreme Court Rule 91.01. He asserted that his Sixth Amendment right to a speedy trial had been violated. He maintained that he was prejudiced by the delay in his trial, which began 31 months after he was arrested (and 30 months from the date of his indictment), in that due to the delay, he was not able to contact McNairy who would have been an alibi witness. Petitioner noted that he raised the speedy trial claim in his pro se Rule 29.15 motion, and argued that he could not have raised it earlier because he never knew whether the trial court received his motion for a speedy trial, as it did not appear on the court's docket sheet. (Resp. Ex. K.)

On November 14, 2011, the Missouri circuit court dismissed the petition for the reasons stated in the State's response, namely, that the claim had been procedurally defaulted by Petitioner's failure to raise it on direct appeal or on appeal from the denial of his Rule 29.15 postconviction motion. *Id*. On January 25, 2012, Petitioner filed a petition for state habeas relief with the Missouri Supreme Court, again raising the speedy trial claim, this time asserting as prejudice that in addition to not being able to contact McNairy, Petitioner was also unable to contact purported alibi witness Shelton, who died before trial. (Resp. Ex. L.) On April 3, 2012, the Missouri Supreme Court summarily denied the petition. *Id.*

**Federal Habeas Action**

In his federal habeas petition, deemed filed on September 11, 2012, Petitioner raises two claims: (1) that he was denied his Sixth Amendment right to a speedy trial, and (2) that he received ineffective assistance of defense counsel, due to defense counsel's failure to investigate, locate, and call McNairy as an alibi witness. Petitioner claims that he was prejudiced by the delay in his trial because two alibi witnesses, Johnson and Shelton, died in the time between Petitioner's arrest and the start of trial. Petitioner also claims that he received ineffective assistance from his trial, appellate, and postconviction counsel, all of whom failed to raise this speedy trial claim in the state trial and appellate courts.

Respondent argues that Petitioner's speedy trial claim is procedurally barred as he failed to fairly present this claim in state court in either his direct appeal or the postconviction proceedings. Respondent argues that in any event, this claim fails on the merits because Petitioner was largely to blame for the delay in his trial, and because his failure to mention the two deceased witnesses at trial precludes him from demonstrating prejudice at this stage. Respondent argues that the state courts reasonably adjudicated Petitioner's second claim, and thus this adjudication should not be disturbed.

## DISSCUSSION

**Procedural Default and Speedy Trial Claim**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is

actually innocent, such that a miscarriage of justice would result by failing to consider the claim.  *See, e.g.*, *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011).  Here, as the State argues, Petitioner's speedy trial claim could and should have been raised on direct appeal, and the failure to do so constituted a procedural default.  *See, e.g., Dunn v. Norman*, No. 4:11CV872 CDP, 2012 WL 1060128, at *4 (E.D. Mo. Mar. 29, 2012).

The ineffective assistance of direct appeal counsel cannot serve as cause to excuse the default, because such ineffectiveness was not raised in the state postconviction proceedings.  *See Taylor v. Bowersox*, 329 F.3d 963, 971 (8th Cir. 2003); *Bland v. Pash*, No. 15-0041-CV-W-GAF-P, 2015 WL 3542816, at *3 (W.D. Mo. June 4, 2015); *see also Dansby v. Hobbs*, 766 F.3d 809, 833 (8th Cir. 2014) (declining to extend the holding of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), that ineffective assistance of postconviction counsel could constitute cause to excuse a procedural default of a claim that trial counsel was ineffective, to a claim that direct appeal counsel was ineffective).  The state habeas petitions filed by Petitioner do not change this analysis, as the Missouri circuit court reasonably dismissed that petition on procedural grounds, and this Court can assume that the Missouri Supreme Court did the same with respect to the second petition.

Petitioner also fails to show that a fundamental miscarriage of justice will result if his defaulted speedy trial claim is not considered, as he has provided no new evidence that affirmatively demonstrates that he is actually innocent of the crimes of conviction. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (explaining that a petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the

crime for which he was convicted in order to fit within the miscarriage of justice exception). In sum, Petitioner's speedy trial claim will be denied as procedurally barred.[3]

**Claim of Ineffective Assistance of Defense Counsel**

Where a claim has been adjudicated on the merits in state court, AEDPA provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> "[C]learly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions. And an "unreasonable application of" those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal

---

[3] Even if the Court were to consider Petitioner's speedy trial on the merits, the Court would deny it, as, although a 31-month delay is quite long, Plaintiff has not made any showing of the reasons for the delay, nor has he made a persuasive showing that his defense was impaired due to the delay. There has been no showing that either Johnson or Shelton would have provided Petitioner with a viable alibi defense. *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972) (explaining that a speedy trial claim is to be judged by consideration of (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant; prejudice, the most important factor, considers impairment to the defense); *Khalifa v. Cash*, 594 F. App'x 339, 341-42 (9th Cir. 2014) (holding that a habeas petitioner was not prejudiced by a three and a half year delay in bringing him to trial for first degree murder, despite his assertion that two witnesses were unable to testify on his behalf due to the delay, where the petitioner failed to show "beyond mere speculation" that the witnesses "would have said anything favorable enough to establish prejudice"), *cert. denied sub nom. Khalifa v. Soto*, 135 S. Ct. 2055 (2015).

> court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted); *see also Litschewski v. Dooley*, 792 F.3d 1012, 1016 (8th Cir. 2015).

With respect to a state court's factual determinations, a federal habeas court may not characterize them as unreasonable

> merely because [the federal court] would have reached a different conclusion in the first instance. Instead, § 2254(d)(2) requires that [the federal court] accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. . . . [H]owever, even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief.

*Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citations omitted).

"Where there has been one reasoned state judgment rejecting a federal claim, the Court held, federal habeas courts should presume that later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Hittson v. Chatman*, 135 S. Ct. 2126, 2127 (2015) (citation omitted).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> The first prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The second prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Tunstall v. Hopkins*, 306 F.3d 601, 607 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

Here, the Court concludes that the state courts reasonably held that defense counsel's failure to locate and call McNairy as a witness did not constitute ineffective assistance of counsel. The state courts applied the correct legal principles to the claim, and reasonably found, based on the evidence at the postconviction evidentiary hearing, that defense counsel made adequate attempts to locate McNairy. *See Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997) (holding that the record did not support the habeas petitioner's claim that trial counsel was ineffective for failing to adequately pursue alibi witnesses; "This is not a situation in which counsel made no effort to contact alibi witnesses.").

This claim fails for the additional reason that the state courts reasonably found, based on the record, that even had McNairy testified for the defense, he would not have provided Petitioner with a successful alibi defense. *See, e.g., Richard v. Steele*, No. 4:12 CV 1504 RWS, 2015 WL 1809436, at *3 (E.D. Mo. Apr. 21, 2015) (holding that the state

court of appeals reasonably found there was no prejudice to the petitioner in defense counsel's failure to call the petitioner's sister as an alibi witness, in light of the evidence presented in the case). As the state courts held, McNairy's testimony would not have established that Petitioner did not leave the house at some time while McNairy was asleep. Moreover, McNairy's proposed alibi testimony was problematic for the added reason that he described events he remembered occurring during the night preceding the day of Petitioner's arrest, and the record establishes that Petitioner was arrested six days after the murder.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jeremy King for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2015.